# AFFIDAVIT

1. I, Xavier Martinez, Homeland Security Investigations Special Agent, do hereby depose and state:

2. That I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7). Your Affiant is, therefore, an officer of the United States who is empowered to conduct investigations of, and to make arrest for, the offenses enumerated in Title 18, United States Code, Section 2516. Your affiant has been employed by the Immigration & Customs Enforcement, Homeland Security Investigations for approximately seventeen years. Your affiant is currently assigned to the Homeland Security Investigations (HSI) Mayaguez Office in Mayaguez, Puerto Rico and conducts investigations of organized crime, money laundering, drug smuggling, child pornography, and immigration violations.

3. I have drafted this Affidavit for the limited purpose of establishing probable cause for the violations listed on the attached Criminal Complaint and therefore have not included all of the facts of this investigation. Based upon my personal knowledge and information furnished to me by other state law enforcement officers, I am fully aware, and allege the following facts to the true and correct.

4. On October 8, 2025, at approximately 7:45 PM, a Caribbean Air and Marine Branch (CAMB) Multi-Role Enforcement Aircraft (MEA), detected a suspicious vessel 6 nautical miles (NM) west of Anasco, PR. At approximately 8:15 PM, the MEA coordinated with U.S. Coast Guard Cutter Joseph Tezanos which intercepted the vessel five nautical miles (NM) west of Anasco, PR due to navigating lights out, transiting through known drug trafficking area, erratic maneuvers, and the registered owner of the vessel being flagged for criminal activity in 2019. Two subjects were encountered on board the vessel. The two

U.S. citizens encountered were later identified as Jonathan CAVASSA-Cintron and Randolph VALLADARES-Lozada.

5. Upon Inspection, U.S. Coast Guard (USCG) personnel found a 3ft x 8 inch hidden compartment and they were able to identify what appeared to be brick shape packages in plain view through a crack in the compartment. A field test (03-NIK) of the substances inside the packages yielded positive results for cocaine.

6. U.S. Coast Guard personnel decided to disembark and move the vessel to the Mayaguez port of entry (POE) due to safety concerns from a gasoline leakage in the Yola vessel. Subsequently, Border Patrol was notified and advised of the findings. Upon conclusion of the search, USCG personnel at the Mayaguez POE were able to recover a total of 202 bricks of cocaine concealed inside the vessel.

7. On October 9, 2025, approximately at 8:00am, Ramey Sector Border Patrol Agents responded to the Mayaguez POE. The Border Patrol Agents present took custody of the two U.S. citizens, the seized cocaine, a 26ft fiberglass vessel, and one 60 horse power (HP) out board motor (OBM). The seized evidence and the two arrestees were subsequently transported to the Ramey Border Patrol Station. The final weight of the seized cocaine was 235 kilograms.

8. On the same day, Homeland Security Investigations (HSI) Mayaguez agents and Drug Enforcement Administration (DEA) agents interviewed Randolph VALLADARES-Lozada (hereinafter "VALLADARES-Lozada") at the Ramey Border Patrol station regarding the events that led to his arrest. After reading and explaining VALLADARES-Lozada his constitutional rights, he voluntarily signed a document waving his rights and decided to provide a statement.

9. VALLADAREZ-Lozada told agents present that he was only going to make one statement and that he wasn't going to answer any questions after that. VALLADAREZ-Lozada stated that everything inside the vessel, including the seized cocaine belonged to him. VALLADAREZ-Lozada refused to provide any additional statements.

10. Homeland Security Investigations (HSI) Mayaguez agents and Drug Enforcement Administration (DEA) agents also interviewed Jonathan CAVASSA-Cintron (hereinafter "CAVASSA-Cintron") at the Ramey Border Patrol station regarding the events that led to his arrest. After reading and explaining CAVASSA-Cintron his constitutional rights, he voluntarily signed a document waving his rights and decided to provide a statement.

11. CAVASSA-Cintron stated that on Tuesday, September 30, 2025, proximately at 4:00am, VALLADAREZ-Lozada went to his house to invite him fishing. According to CAVASSA-Cintron, they went out fishing to an area called "Las Coronas" near Desecheo island.

12. CAVASSA-Cintron stated that as they were fishing, another vessel approached them. CAVASSA-Cintron stated that four masked individuals with a rifle threatened them. According to CAVASSA-Cintron, one of the masked individuals boarded and took control of their vessel and started following the other vessel away from mainland (Puerto Rico).

13. CAVASSA-Cintron stated that once they were further away from mainland, he was forced to switch vessels with the masked individuals. CAVASSA-Cintron stated that once he switched vessels, one of the masked individuals stayed with him while VALLADARES-Lozada and the other three masked individuals left in the other vessel.

14. CAVASSA-Cintron stated that for approximately 7 days he was stranded in the

middle of the ocean with the masked individual without barely any water or food. CAVASSA-Cintron stated that after those 7 days, VALLADARES-Lozada and the other masked individuals came back to their location again. According to CAVASSA-Cintron, the masked individuals instructed CAVASSA-Cintron and VALLADAREZ-Lozada to take the yola vessel back to the exact place where they got it from, near the "El Seco" boat ramp in Mayaguez.

15. CAVASSA-Cintron stated that as they were coming back to mainland to park the vessel, that's when the USCG interdicted them.

16. CAVASSA-Cintron stated he wasn't aware of the narcotics concealed inside the vessel.

17. CAVASSA-Cintron signed a consent to search form in order to provide agents consent to examine his mobile phone.

18. A preliminary examination of the mobile device revealed multiple conversations in the WhatsApp application with contacts saved as "Manana", "Randy Buzo 2025", and "Amigo". The conversations with these saved contacts show CAVASSA-Cintron providing these individuals with updates of their current location during the days that he had previously claimed he was held hostage by a masked individual. Numerous calls and deleted message notifications can be seen with these three contacts during the same time period.

19. Record checks for CAVASSA-Cintron and VALLADAREZ-Lozada came back with no criminal history.

20. Based on my training, experience and facts concerning this investigation, I respectfully believe that sufficient probable cause exists to show that CAVASSA-Cintron and VALLADAREZ-Lozada violated federal laws to wit: Title 21, United States Code, Section 841(a)(1), Possession with intent to

distribute 5 kilograms or more of cocaine, Title 21, United States Code, Section 846 Conspiracy to Possess with Intent to Distribute 5 kilograms of more of cocaine.

_____
Xavier A. Martinez
Special Agent
Homeland Security Investigations

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at  7:19 pm  on October   9  , 2025

_____
Hon. Giselle López-Soler
U.S. Magistrate Judge

Digitally signed by Hon. Giselle López-Soler